Jeffrey M. Davidson (Bar No. 248620)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: jdavidson@cov.com

*Attorney for Novo Nordisk A/S*

[*Additional counsel listed on signature page*]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Ex Parte Application of<br><br>NOVO NORDISK A/S,<br><br>　　　　　　　　　　　Applicant. | Civil Case No.:<br><br>**NOVO NORDISK A/S'S EX PARTE APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 PERMITTING DISCOVERY FROM OTSUKA AMERICA PHARMACEUTICAL, INC. FOR USE IN FOREIGN PROCEEDING** |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i

EX PARTE APPLICATION ........................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 4

I. PRELIMINARY STATEMENT ..................................................................................... 4

II. JURISDICTION ............................................................................................................... 6

III. INTRADISTRICT ASSIGNMENT ................................................................................. 6

IV. BACKGROUND TO THE FOREIGN COURT PROCEEDINGS .................................. 6

    A. The Parties and the Asset Purchase Agreement .................................................. 6

    B. The Foreign Court Proceedings ........................................................................... 7

        1. The Singapore Proceeding ....................................................................... 7

        2. The Cayman Proceeding .......................................................................... 8

V. THE APPLICATION TO TAKE DISCOVERY UNDER 28 U.S.C. § 1782 .................. 8

VI. ARGUMENT .................................................................................................................... 9

    A. The Application Satisfies the Statutory Requirements of 28 U.S.C. § 1782. ......... 9

        1. Otsuka Resides or Is Found in the Northern District of California. ........... 9

        2. Novo Seeks Discovery For Use in Foreign Proceedings. ........................ 10

        3. The Application Is Made by an Interested Party. .................................... 11

    B. The *Intel* Discretionary Factors Favor Granting the Application. ........................ 11

        1. Otsuka Is Not a Party to the Foreign Court Proceedings. ........................ 11

        2. Singapore and Cayman Courts Are Receptive to the Information Sought by Novo's Application. ............................................................. 12

        3. Novo's Application Is Not an Attempt to Circumvent Foreign Proof-Gathering Limitations. ............................................................................. 13

        4. The Discovery Sought Is Not Unduly Burdensome or Intrusive. ............. 14

    C. It Is Appropriate to Grant this Application on an Ex Parte Basis. ........................ 15

VII. CONCLUSION ............................................................................................................... 15

i

NOVO NORDISK A/S'S EX PARTE APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 PERMITTING DISCOVERY FROM OTSUKA AMERICA PHARMACEUTICAL, INC. FOR USE IN FOREIGN PROCEEDING

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Alpine Partners (BVI) L.P.*,
  635 F. Supp. 3d 900 (N.D. Cal. 2022) ...................................................................................10

*In re Application of Temp. Servs. Ins. Ltd.*,
  2009 WL 2843258 (W.D.N.Y. Aug. 28, 2009) .......................................................................12

*In re Ex Parte Application of TPK Touch Sols. (Xiamen) Inc.*,
  2016 WL 6804600 (N.D. Cal. Nov. 17, 2016) .........................................................................9

*In re: Ex Parte Application Varian Med. Sys. Int'l AG*,
  2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) ................................................................12, 15

*In re Borrelli*,
  2020 WL 5642484 (N.D. Cal. Sept. 22, 2020) .......................................................................10

*CPC Pat. Techs. Pty Ltd. v. Apple Inc.*,
  119 F.4th 1126 (9th Cir. 2024) ................................................................................................11

*In re Dickson*,
  2020 WL 550271 (S.D.N.Y. Feb. 4, 2020) .............................................................................12

*In re Eshelman*,
  2023 WL 3361192 (N.D. Cal. May 9, 2023) ..........................................................................14

*In re Gushlak*,
  2011 WL 3651268 (E.D.N.Y. Aug. 17, 2011), *aff'd sub nom., Gushlak v. Gushlak*,
  486 F. App'x 215 (2d Cir. 2012) ............................................................................................13

*In re Hopkins*,
  2020 WL 733182 (N.D. Cal. Feb. 13, 2020) ..........................................................................12

*HRC-Hainan Holding Co., LLC v. Yihan Hu*,
  2020 WL 906719 (N.D. Cal. Feb. 25, 2020) ..........................................................................10

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
  2020 WL 820327 (N.D. Cal. Feb. 19, 2020) .......................................................................9, 10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ........................................................................................................ *passim*

*IPCom GMBH & Co. KG v. Apple Inc.*,
  61 F. Supp. 3d 919 (N.D. Cal 2014) .......................................................................................15

*Khrapunov v. Prosyankin*,
 931 F.3d 922 (9th Cir. 2019) ..................................................................................9

*Laggner v. Parsa*,
 2023 WL 163579 (N.D. Cal. Jan. 11, 2023) ....................................................10, 12

*In re Path Network, Inc.*,
 2024 WL 4828075 (N.D. Cal. Nov. 18, 2024) ........................................................12

*In re Qualcomm Inc.*,
 162 F. Supp. 3d at 1044 .........................................................................................14

*In re Request for Int'l Jud. Assistance*,
 2025 WL 275998 (N.D. Cal. Jan. 22, 2025) ...........................................................11

*In re: Request for Int'l Jud. Assistance From the Turkish Ministry of Just.*,
 2016 WL 2957032 (N.D. Cal. May 23, 2016) ........................................................14

*In re Request for Jud. Assistance From People's Ct. of Da Nang City in Viet. in Matter of Dinh v. Nguyen*,
 2022 WL 3327923 (N.D. Cal. Aug. 11, 2022) ..................................................2, 15

*In re Roanoke Ins. Grp., Inc.*,
 2021 WL 1753810 (N.D. Cal. May 4, 2021) ..........................................................10

*In re Super Vitaminas, S.A.*,
 2017 WL 5571037 (N.D. Cal. Nov. 20, 2017) .........................................................9

*In re Third Eye Cap. Corp.*,
 2022 WL 714758 (D.N.J. Mar. 10, 2022) .........................................................12, 13

**Statutes and Court Rules**

28 U.S.C. § 1782 ............................................................................................... *passim*

Civ. L.R. 3-2(d) ..........................................................................................................6

# EX PARTE APPLICATION

Pursuant to 28 U.S.C. § 1782, Novo Nordisk A/S ("Novo") hereby applies to this Court for an ex parte order authorizing it to conduct discovery of Otsuka America Pharmaceutical, Inc (with its affiliates as necessary, "Otsuka"). Specifically, Novo, a pharmaceutical company based in Denmark, respectfully requests that the Court authorize the service of a subpoena upon Otsuka seeking documents and related deposition testimony in support of foreign proceedings pending in the courts of Singapore and the Cayman Islands.

As explained in the accompanying memorandum of law, Novo bases this application upon facts set forth in the accompanying Declaration of Danny Ong (Novo's Singapore counsel), dated March 13, 2025, and the exhibits thereto, and the Declaration of Katherine Pearson (Novo's Cayman counsel), dated March 13, 2025, and the exhibits thereto. A short summary of those facts follows below.

In October 2023, Novo entered into a transaction with KBP Biosciences Pte. Ltd. ("KBP"), a clinical-stage biopharmaceutical company incorporated in Singapore, whereby Novo acquired rights to a drug developed by KBP, Ocedurenone, for the treatment of patients with uncontrolled hypertension and advanced chronic kidney disease. After the transaction closed, Novo discovered evidence that KBP and its Chairman and Founder, Dr. Huang Zhenhua, had fraudulently induced Novo to enter the transaction by misrepresenting and omitting material information concerning the efficacy of Ocedurenone during due diligence.

Among other material information, KBP and Dr. Huang misrepresented and failed to disclose that purportedly favorable clinical trial results concerning Ocedurenone were driven entirely by a single trial site in Bulgaria. Directly relevant to this application, Novo further discovered that Otsuka had previously—i.e., before Novo's own deal with KBP—walked away from its own potential transaction involving Ocedurenone with KBP after KBP provided it with analyses of the anomalous data from the Bulgarian trial site—analyses that KBP subsequently withheld from Novo during due diligence.

After discovering KBP's and Dr. Huang's fraud, Novo filed applications in the Singapore International Commercial Court and the Grand Court of the Cayman Islands Financial Services Division seeking worldwide freezing orders against KBP, Dr. Huang, and KBP's parent company, KBP Biosciences Holdings Limited ("KBP Cayman"), all in aid of an international arbitration Novo is

preparing to commence. On February 14, 2025, the Singapore court entered a worldwide freezing order against KBP and Dr. Huang, prohibiting them from disposing or diminishing their assets. On February 17, 2025, the Cayman court entered an order freezing the worldwide assets of KBP Cayman. KBP, Dr. Huang, and KBP Cayman have indicated that they intend to contest the Singapore and Cayman freezing orders.

In aid of the ongoing proceedings in Singapore and Cayman, Novo seeks targeted discovery from Otsuka concerning the information provided by KBP to Otsuka about the clinical trial site in Bulgaria and Otsuka's decision not to proceed with a transaction for Ocedurenone. Otsuka is not a party to the proceedings in Singapore and the Cayman Islands, and Singapore and Cayman courts lack the ability to compel Otsuka to provide the documents and information that Novo seeks by this application. Singapore and Cayman courts are receptive to evidence lawfully obtained in the United States via Section 1782 discovery, and this application would not circumvent any foreign proof-gathering limitations. In addition, counsel for Otsuka has represented that it does not oppose the request.

As more fully detailed in the accompanying memorandum of law, Novo's request clearly meets the statutory requirements under 28 U.S.C. § 1782. The discretionary factors under *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004) also weigh strongly in favor of granting the relief requested herein. Courts frequently issue orders granting Section 1782 applications on an ex parte basis because the concerns around ex parte requests are mitigated by the opposing party's ability to raise objections after a subpoena is issued via a motion to quash. *See, e.g.*, *In re Request for Jud. Assistance From People's Ct. of Da Nang City in Viet. in Matter of Dinh v. Nguyen*, 2022 WL 3327923, at *1 (N.D. Cal. Aug. 11, 2022).

Accordingly, Novo respectfully requests that the Court grant this ex parte application and authorize Novo to serve a subpoena upon Otsuka in the form attached as Exhibit 2 to the Declaration of David Z. Pinsky, dated March 13, 2025.

Dated: March 13, 2025                                   Respectfully submitted,

By: /s/ Jeffrey M. Davidson

Jeffrey M. Davidson (Bar No. 248620)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: jdavidson@cov.com

Mark P. Gimbel *(pro hac vice application forthcoming)*
David Z. Pinsky *(pro hac vice application forthcoming)*
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: +1 (212) 841-1000
Facsimile: +1 (646) 441-9137
Email: mgimbel@cov.com
Email: dpinsky@cov.com

*Counsel for Applicant Novo Nordisk A/S*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Novo Nordisk A/S ("Novo") brings this application for an ex parte order authorizing it to request discovery from Otsuka America Pharmaceutical, Inc. (with its affiliates as necessary, "Otsuka"), pursuant to 28 U.S.C. § 1782. Novo seeks this discovery in aid of judicial proceedings Novo has commenced in Singapore and the Cayman Islands (together, the "Foreign Court Proceedings") against KBP Biosciences Pte. Ltd. ("KBP"); KBP's Executive Chairman and Founder, Dr. Huang Zhenhua; and KBP's parent company, KBP Biosciences Holdings Limited ("KBP Cayman," and, with KBP and Dr. Huang, the "KBP Defendants").

Novo is a leading pharmaceutical company based in Denmark. In October 2023, Novo entered into an asset purchase agreement with KBP (the "APA"), whereby Novo acquired from KBP rights to a drug known as Ocedurenone, intended for treating patients with uncontrolled hypertension and advanced chronic kidney disease. In exchange for rights to Ocedurenone and certain related assets, Novo paid an upfront purchase price of approximately $800 million.

Before entering the APA, Novo conducted due diligence into Ocedurenone, including concerning the results of the completed Phase 2b BLOCK/CKD Study (the "Phase 2 Study") of the drug. According to information provided by KBP during due diligence, the Phase 2 Study supported the safety and efficacy of Ocedurenone for lowering patients' systolic blood pressure, irrespective of their "different . . . ethnicity [and] geographic region."

That information, however, was false and misleading. As Novo discovered after the APA closed, the country-level final results of the Phase 2 Study showed a treatment effect only at a single clinical trial site in Bulgaria, and no treatment effect at any of the 61 other trial sites around the world. Further, Novo discovered that while KBP and Dr. Huang hid the truth about the Phase 2 Study results from Novo, they had provided specific analyses concerning the Bulgaria site to another prospective licensor or purchaser of Ocedurenone—Otsuka. After receiving those analyses, Otsuka decided *not* to complete a transaction for Ocedurenone. Novo claims that KBP and Dr. Huang fraudulently induced Novo into acquiring rights to Ocedurenone by misrepresenting and omitting material information concerning the efficacy of

4

NOVO NORDISK A/S'S EX PARTE APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 PERMITTING DISCOVERY FROM OTSUKA AMERICA PHARMACEUTICAL, INC. FOR USE IN FOREIGN PROCEEDING

Ocedurenone during due diligence, knowing that that information would have caused Novo—like Otsuka—to walk away from a deal.

In light of these claims and the risk that the KBP Defendants would dissipate the fraudulently obtained proceeds of the Ocedurenone transaction, Novo commenced the Foreign Court Proceedings and requested worldwide freezing orders against the KBP Defendants, all in support of an international arbitration claim that Novo is preparing to commence. In February 2025, the courts (i.e., in Singapore and in the Cayman Islands) in the Foreign Court Proceedings granted Novo's applications and barred the KBP Defendants from dissipating their assets, in aid of the arbitration. The KBP Defendants have engaged counsel in both Foreign Court Proceedings and have stated that they intend to challenge the freezing orders. Novo expects the KBP Defendants' challenge applications to be filed imminently.

By this application, Novo seeks an order under Section 1782 authorizing it to request discovery in the form of documents and deposition testimony for use in the Foreign Court Proceedings. Specifically, Novo seeks targeted discovery from Otsuka concerning what information KBP provided to Otsuka about the anomalous Bulgarian results in the Phase 2 Study and the reason why Otsuka declined to complete a transaction for Ocedurenone after receiving this information. This discovery is highly relevant to Novo's claims in the Foreign Court Proceedings that it has a good arguable case of fraud, that there is a serious issue to be tried that KBP and Dr. Huang fraudulently induced the APA, and that there is a risk the KBP Defendants will dissipate their assets, supporting continued freezing of the KBP Defendants' assets.

Each of the requirements of Section 1782 is met: (1) Otsuka has an office in, and thus resides or is found in, this District; (2) the requested discovery is "for use" in the Foreign Court Proceedings; and (3) Novo is an interested party in those proceedings. The applicable discretionary factors also weigh in favor of granting the application: the information that Novo seeks is outside the reach of the Singapore and Cayman courts, and Otsuka is not a party to those proceedings; Singapore and Cayman courts are receptive to discovery obtained pursuant to Section 1782; Novo's application does not seek to circumvent Singapore or Cayman proof-gathering limits; and the discovery that Novo seeks is neither unduly intrusive nor burdensome, including because Otsuka has confirmed to Novo's counsel that it has no objection to this application.

Accordingly, Novo respectfully requests that the Court expeditiously grant this ex parte application and authorize Novo to serve a subpoena on Otsuka in the form attached as Exhibit 2 to the Declaration of David Z. Pinsky.

## II. JURISDICTION

This Court has jurisdiction to hear this application pursuant 28 U.S.C. § 1782, which provides "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." Otsuka maintains an office within this District at 3956 Pont Eden Way, Hayward, California, 94545. Declaration of David Z. Pinsky ("Pinsky Decl.") ¶ 2.

## III. INTRADISTRICT ASSIGNMENT

This action should be assigned to the San Francisco Division or the Oakland Division. This application seeks leave to take discovery from Otsuka, which maintains an office in Hayward, California. *Id.* Hayward is in Alameda County and therefore within the San Francisco Division or the Oakland Division. Civ. L. R. 3-2(d). The documents subject to the request are likely to be located within the San Francisco Division or the Oakland Division.

## IV. BACKGROUND TO THE FOREIGN COURT PROCEEDINGS

### A. The Parties and the Asset Purchase Agreement

Novo is a pharmaceutical company headquartered in Bagsværd, Denmark. Declaration of Danny Ong ("Ong Decl.") ¶ 2. KBP is a privately held clinical-stage biopharmaceutical company incorporated in Singapore. *Id.* KBP Cayman is KBP's parent company and is incorporated in the Cayman Islands. Declaration of Katie Pearson ("Pearson Decl.") ¶ 2. Dr. Huang is a Singapore citizen, who is the Founder and Executive Chairman of KBP, and the sole director and a significant indirect shareholder of KBP Cayman. Ong Decl. ¶ 2; Pearson Decl. ¶ 5.

On October 11, 2023, Novo and KBP entered into the APA, pursuant to which Novo acquired rights to KBP's third-generation, non-steroidal, mineralocorticoid receptor antagonist, Ocedurenone, for an upfront purchase price of approximately $800 million. Ong Decl. ¶¶ 5, 14. Prior to entering into the APA, Novo and KBP engaged in due diligence, and KBP represented to Novo that KBP's Phase 2 Study supported the safety and efficacy of Ocedurenone for treatment of patients with uncontrolled hypertension

across subgroups, including geographical region. *Id.* ¶ 14. Based on the information KBP provided to Novo during due diligence, Novo agreed to proceed with the Ocedurenone transaction and enter into the APA. *Id.*

After the transaction closed, Novo discovered that the information KBP had provided during diligence was false and misleading. *Id.* ¶¶ 14-15. Among other previously undisclosed material information, Novo learned that the purportedly favorable Phase 2 Study results were driven entirely by a single clinical trial site in Bulgaria. *Id.* ¶ 14. Novo also discovered documents reflecting that, prior to engaging in due diligence with Novo, KBP had engaged in a due diligence process with another potential purchaser or licensor of Ocedurenone—Otsuka. *Id.* ¶¶ 13-14. During diligence, KBP had provided analyses to Otsuka reflecting that the results of the Phase 2 Study were driven entirely by the Bulgarian trial site. *Id.* ¶ 13. Critically, however, KBP failed to provide these or any similar analyses to Novo during the diligence process leading to the APA. *Id.* ¶¶ 13-14. Otsuka elected not to enter into a transaction with KBP for Ocedurenone after KBP was unable to provide convincing explanations for why the results in Bulgaria were better than at all other clinical trial sites in the rest of the world. *Id.* ¶ 13.

B.   The Foreign Court Proceedings

After discovering that KBP concealed material information and misrepresented Ocedurenone's efficacy in order to induce Novo to acquire rights to Ocedurenone, Novo filed the Foreign Court Proceedings. Novo requested worldwide freezing orders against the KBP Defendants to prevent them from dissipating assets and thwarting any arbitral award that Novo obtains in an arbitration that Novo intends to commence to pursue claims of fraud.

1.   *The Singapore Proceeding*

On February 10, 2025, Novo filed an application in the Singapore International Commercial Court ("SICC") for a worldwide freezing order against KBP and Dr. Huang on the basis that (1) it has a good arguable case that KBP and Dr. Huang fraudulently induced Novo to enter into the APA by misrepresenting and omitting material information regarding Ocedurenone's efficacy; and (2) there is a real risk that KBP and Dr. Huang will dissipate their assets to frustrate enforcement of any arbitral award Novo obtains against them. Ong Decl. ¶ 5.

On February 14, 2025, the SICC granted to Novo a worldwide freezing order prohibiting KBP and Dr. Huang from dissipating their assets. *Id.* ¶ 6. The freezing order provides that it "will remain in force until further order" and KBP and Dr. Huang "may apply to the [SICC] at any time to vary or discharge this order (or so much of it as affects that person)." *Id.*

KBP and Dr. Huang have engaged counsel to represent them in the Singapore proceeding and have stated publicly that they will apply to the SICC to challenge the worldwide freezing order. *Id.* ¶¶ 8-9. Novo expects that KBP and Dr. Huang will do so imminently and seek the requested discovery from Otsuka in order to respond to any challenge of the order.

### 2. The Cayman Proceeding

On February 14, 2025, after receiving the worldwide freezing order in the SICC, Novo filed an application with the Grand Court of the Cayman Islands Financial Services Division for a worldwide freezing order against KBP's parent company, KBP Cayman claiming (1) there is a serious issue to be tried that KBP and Dr. Huang fraudulently induced Novo to acquire rights to Ocedurenone; (2) there is a serious issue to be tried that KBP Cayman received a substantial portion of the approximately $800 million Novo paid to KBP to acquire rights to Ocedurenone; and (3) there is a real risk that KBP Cayman, having received a substantial portion of the Ocedurenone proceeds, will dissipate the assets to frustrate the enforcement of any arbitral award that Novo obtains against KBP and Dr. Huang. Pearson Decl. ¶¶ 5-6.

On February 17, 2025, the Cayman court granted to Novo a worldwide freezing order prohibiting KBP Cayman from dissipating its assets. *Id.* ¶ 7. Like the SICC's order, the Cayman court's order states that it remains in place until a further hearing before the court, which KBP Cayman may apply for at any time. *Id.*

KBP Cayman has engaged counsel and has informed Novo that it believes that a hearing to contest the order should be scheduled after the SICC holds its hearing on KBP and Dr. Huang's anticipated application to set aside the Singapore freezing order. *Id.* ¶¶ 9-10.

## V. THE APPLICATION TO TAKE DISCOVERY UNDER 28 U.S.C. § 1782

In aid of the Foreign Court Proceedings, Novo respectfully requests that this Court issue an order authorizing Novo to take discovery in the United States from Otsuka, a company residing or found in this District. Given that Otsuka previously received information during its due diligence process with KBP

8

NOVO NORDISK A/S'S EX PARTE APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 PERMITTING DISCOVERY FROM OTSUKA AMERICA PHARMACEUTICAL, INC. FOR USE IN FOREIGN PROCEEDING

that KBP subsequently withheld from Novo during due diligence for the APA, Otsuka likely possesses information directly relevant to KBP's fraud.

As set out in the proposed subpoena attached as Exhibit 2 to the Declaration of David Z. Pinsky, Novo seeks three categories of documents from Otsuka related to the information provided to it by KBP regarding the Phase 2 Study and the reasons why Otsuka elected not to acquire or license Ocedurenone. Novo also seeks to depose a representative of Otsuka with respect to the documents Otsuka produces in response to these requests. This discovery would support Novo's claims that any application by the KBP Defendants to set-aside the worldwide freezing orders in the Foreign Court Proceedings should be denied because Novo has established a good arguable case and / or serious issue to be tried that KBP and Dr. Huang fraudulently induced Novo to acquire rights to Ocedurenone and there is a real risk that the KBP Defendants will dissipate their assets to frustrate the enforcement of any arbitral award Novo obtains against KBP and Dr. Huang.

## VI. ARGUMENT

### A. The Application Satisfies the Statutory Requirements of 28 U.S.C. § 1782.

Section 1782 authorizes a district court to allow discovery in aid of foreign proceedings provided that (1) the person from whom discovery is sought "resides or is found" in the district; (2) the discovery is "for use in a proceeding" before a "foreign tribunal"; and (3) the application seeking discovery is made by an "interested person."  28 U.S.C. § 1782(a); *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004) (articulating these elements); *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (same).  For the reasons set out below, this application meets all three statutory requirements.

#### 1. Otsuka Resides or Is Found in the Northern District of California.

Otsuka maintains an office at 3956 Pont Eden Way, Hayward, California.  Pinsky Decl. ¶ 2.  As a result, Otsuka "resides or is found in" this District.  *See Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, 2020 WL 820327, at *3 (N.D. Cal. Feb. 19, 2020) ("[T]he found-in test is also satisfied if the target of discovery has a presence in a district."); *In re Super Vitaminas, S.A.*, 2017 WL 5571037, at *2 (N.D. Cal. Nov. 20, 2017) (having an office in this District is sufficient); *In re Ex Parte Application of TPK Touch Sols. (Xiamen) Inc.*, 2016 WL 6804600, at *2 (N.D. Cal. Nov. 17, 2016) (finding subpoenaed party was found within this District for purposes of § 1782 because it maintained an office in it).

### 2. Novo Seeks Discovery For Use in Foreign Proceedings.

Novo seeks discovery from Otsuka for use in two pending foreign proceedings: the Singapore court proceeding and the Cayman court proceeding. Both proceedings are pending before a foreign tribunal. *See Illumina Cambridge Ltd.*, 2020 WL 820327, at *3 (pending proceedings before foreign courts "clearly meet the statutory requirement of a proceeding in a foreign tribunal" and collecting cases); *see also, e.g.*, *Laggner v. Parsa*, 2023 WL 163579, at *2 (N.D. Cal. Jan. 11, 2023) (finding that an assertion "that the discovery will be used in [the specific] Cayman Islands proceedings and is substantively relevant to that dispute" meets the "for use" requirement); *In re Roanoke Ins. Grp., Inc.*, 2021 WL 1753810, at *3 (N.D. Cal. May 4, 2021) (granting application for discovery where subpoenas were relevant to proceedings in Singapore and other countries). Directly relevant here, courts in this District have also granted Section 1782 applications seeking discovery in support of interim-relief proceedings pending in a foreign court. *See, e.g.*, *HRC-Hainan Holding Co., LLC v. Yihan Hu*, 2020 WL 906719, at *8 (N.D. Cal. Feb. 25, 2020) (holding that Hainan court proceeding to preserve assets for arbitration award met the second *Intel* requirement); *In re Borrelli*, 2020 WL 5642484, at *2 (N.D. Cal. Sept. 22, 2020) (granting request for Section 1782 discovery for use in Virgin Islands proceeding to preserve asserts pending the outcome of a Cypriot proceeding).

Novo seeks information that is highly relevant to its claims in the Foreign Court Proceedings that the worldwide freezing orders should not be set aside because there is a good arguable case of fraud and / or a serious issue to be tried with respect to fraud against the KBP Defendants, and there is a risk that the KBP Defendants will dissipate their assets. Novo intends to use the discovery obtained here in the Foreign Court Proceedings. *See Intel Corp.*, 542 U.S. at 259 (Section 1782 does not require that adjudicative proceedings are "pending" or "imminent," but only "that a dispositive ruling . . . be within reasonable contemplation"); *In re Alpine Partners, (BVI) L.P.*, 635 F. Supp. 3d 900, 908 (N.D. Cal. 2022) ("To be 'for use' in a foreign proceeding, the information sought must be relevant, and courts should be 'permissive' in interpreting that standard."); *Laggner*, 2023 WL 163579 at *2 ("Courts in the Ninth Circuit have observed that the 'for use' requirement focuses on the practical ability of an applicant to place a beneficial document . . . before a foreign tribunal,' which requires 'show[ing] that the material requested is tethered to a specific foreign proceeding and is relevant.").

3. *The Application Is Made by an Interested Party.*

Novo is a party to the Foreign Court Proceedings and thus is a paradigmatic "interested party" under Section 1782. *See Intel Corp.*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782.").

B. The *Intel* Discretionary Factors Favor Granting the Application.

Where, as here, a Section 1782 application satisfies the statutory requirements, the court must then determine whether to grant the application in its discretion. The Supreme Court has identified the following factors that the court may consider in exercising its discretion:

1. whether the persons from whom the discovery is being sought are participants in the foreign proceeding;
2. the nature and character of the foreign proceeding and the receptivity of the foreign tribunal to U.S. federal court judicial assistance;
3. whether the request is an attempt to circumvent foreign proof-gathering limitations; and
4. whether the discovery sought is unduly burdensome.

*Intel Corp.*, 542 U.S. at 264-65; *see also CPC Pat. Techs. Pty Ltd. v. Apple Inc.*, 119 F.4th 1126, 1129 (9th Cir. 2024) (identifying the same factors). These factors should be assessed in light of the "twin aims of [the statute:] providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to [U.S.] courts." *Intel*, 542 U.S. at 252 (citation and quotation marks omitted). As explained below, each of the discretionary factors weighs in favor of granting the application.

1. *Otsuka Is Not a Party to the Foreign Court Proceedings.*

The first discretionary factor is whether Otsuka is a participant in the foreign proceedings. "[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.* at 264. Otsuka is not a party to the Singapore court proceeding or the Cayman court proceedings. *See* Ong Decl. ¶ 16; Pearson Decl. ¶ 17. "In these circumstances, the need for assistance pursuant to § 1782(a) is greater than it would be in circumstances where the foreign tribunal may order parties appearing before it or third parties within its jurisdiction to produce evidence." *In re Request for Int'l Jud. Assistance*, 2025

WL 275998, at *2 (N.D. Cal. Jan. 22, 2025) (citation and internal quotation marks omitted); *see also In re Path Network, Inc.*, 2024 WL 4828075, at *3 (N.D. Cal. Nov. 18, 2024) ("The purpose of Section 1782 is to provide discovery for use in foreign proceedings that otherwise would not be available in those proceedings.").

        2.    *Singapore and Cayman Courts Are Receptive to the Information Sought by Novo's Application.*

The second discretionary factor is the nature and character of the foreign proceeding and the receptivity of the foreign tribunal to U.S. federal court judicial assistance. *Intel*, 542 U.S. at 264. "This factor focuses on whether the foreign tribunal is willing to consider the information sought." *In re: Ex Parte Application Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016). "In the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, courts tend to err on the side of permitting discovery." *Id.*; *see also Laggner*, 2023 WL 163579, at *3 (noting that "[w]here there is no evidence suggesting that foreign courts would be unreceptive to the requested discovery, the second discretionary factor weighs in favor of the application" and the factor "also supports authorizing discovery where the applicant offers at least some evidence and caselaw to support its view that the foreign courts are generally receptive to evidence obtained in the United States under § 1782" (citations omitted)).

Here, both the Singapore and Cayman courts are receptive to the use of relevant evidence obtained lawfully in other jurisdictions, including the United States. Ong Decl. ¶ 19; Pearson Decl. ¶ 20. There is no indication that the Singapore court or Cayman court would be opposed to considering evidence procured under Section 1782. *See* Ong Decl. ¶ 19; Pearson Decl. ¶ 20.

Indeed, U.S. federal courts have previously granted Section 1782 applications seeking information to be used in Singapore and Cayman court proceedings. *See, e.g.*, *In re Hopkins*, 2020 WL 733182, at *3 (N.D. Cal. Feb. 13, 2020) ("[T]here is no indication that the Cayman Islands court would not be receptive to the information sought."); *In re Third Eye Cap. Corp.*, 2022 WL 714758, at *2 (D.N.J. Mar. 10, 2022) (granting application for discovery where "the discovery Petitioner seeks is for use in [a] Singapore Action"); *In re Dickson*, 2020 WL 550271, at *1–2 (S.D.N.Y. Feb. 4, 2020) (granting discovery "for the pending foreign proceeding in the Grand Court [of the Cayman Islands]"); *In re Application of Temp.*

*Servs. Ins. Ltd.*, 2009 WL 2843258, at *2 (W.D.N.Y. Aug. 28, 2009) (granting application for discovery relevant to "the proceeding which remains pending in the Cayman Islands").

        3.     *Novo's Application Is Not an Attempt to Circumvent Foreign Proof-Gathering Limitations.*

The third discretionary factor is whether Novo's application for discovery is an attempt to circumvent foreign proof-gathering limitations. *See Intel Corp.*, 542 U.S. at 265. "[T]his factor weighs in favor of discovery where there is nothing to suggest that the applicant is attempting to circumvent foreign proof-gathering restrictions." *Med. Inc. Ass'n Smile Create*, 547 F. Supp. 3d 894, 899 (N.D. Cal. 2021) (quotations and citations omitted).

Here, lead counsel for Novo in the Singapore Court proceeding, Danny Ong, an attorney licensed to practice in Singapore, states in his declaration that "there is no provision under Singapore law that prevents Novo from using the information that it acquires in the United States in litigation in Singapore, provided such information has been obtained lawfully." Ong Decl. ¶ 19. Similarly, lead counsel for Novo in the Cayman Court proceeding, Katie Pearson, an attorney licensed to practice in the Cayman Islands, states in her declaration that "there is no provision under Cayman law that prevents Novo from using the information that it acquires in the United States in litigation in the Cayman Islands, provided such information has been obtained lawfully." Pearson Decl. ¶ 20.

In response to other Section 1782 applications seeking information to be used in Singapore and Cayman court proceedings, courts have recognized that this *Intel* factor weighs in favor of granting the requested discovery. *See, e.g.*, *In re Gushlak*, 2011 WL 3651268, at *5 (E.D.N.Y. Aug. 17, 2011), *aff'd sub nom., Gushlak v. Gushlak*, 486 F. App'x 215 (2d Cir. 2012) (weighing third *Intel* factor "in favor of ordering discovery" when there was no "authoritative proof . . . that the Cayman Islands have any proof-gathering restrictions or other policies that Petitioner is attempting to circumvent"); *In re Third Eye Cap. Corp.*, 2022 WL 714758, at *3 (finding nothing to suggest that request for discovery in aid of a Singapore action would "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States").

13

NOVO NORDISK A/S'S EX PARTE APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 PERMITTING DISCOVERY FROM OTSUKA AMERICA PHARMACEUTICAL, INC. FOR USE IN FOREIGN PROCEEDING

### 4. The Discovery Sought Is Not Unduly Burdensome or Intrusive.

The final discretionary factor is whether the discovery sought is "unduly intrusive or burdensome." *Intel Corp.*, 542 U.S. at 265. Discovery requests may be intrusive or burdensome if "not narrowly tailored temporally, geographically or in their subject matter." *In re Qualcomm Inc.*, 162 F. Supp. 3d at 1044.

Here, the subpoena is targeted to three narrow categories of documents and related deposition testimony: (1) documents sufficient to show any interim results provided to Otsuka from the Phase 2 Study of Ocedurenone; (2) any analyses provided by KBP of the data, results, or clinical practices at the Bulgaria Site during the Phase 2 Study of Ocedurenone, including any responses by KBP to questions or concerns raised by Otsuka about such matters; and (3) documents sufficient to show the reason or reasons why Otsuka decided not to continue or complete the Ocedurenone transaction. Each of these requests is highly relevant to supporting Novo's claims in connection with the Foreign Court Proceedings that there is a good arguable case of fraud and / or a serious issue to be tried with respect to fraud against the KBP Defendants, as well as Novo's claims that the KBP Defendants are likely to dissipate their assets. For example, Novo's request for the information KBP provided to Otsuka that it subsequently withheld from Novo supports its claims that there is a good arguable case and /or serious issue to be tried with respect to the KBP Defendants' fraud and that their moral character demonstrates a risk of dissipation. Novo's request for discovery as to why Otsuka opted not to enter into a deal with KBP for Ocedurenone similarly supports its claims of a good arguable case and / or serious issue to be tried as to fraud, and the requested discovery is directly relevant to the KBP Defendants' moral character and the resultant risk of dissipation.

Novo's requests are also narrowly tailored so they are neither unduly burdensome nor intrusive. *See, e.g.*, *In re Eshelman*, 2023 WL 3361192, at *3 (N.D. Cal. May 9, 2023) (Section 1782 discovery request was not unduly intrusive or burdensome when it was "narrowly tailored to only seek documents 'sufficient to show'" the requested information, and when it sought only a one-hour deposition "to authenticate and explain the documents produced in response to the document subpoena").

Further demonstrating that these requests are appropriately tailored, counsel for Novo has conferred with Otsuka regarding the proposed subpoena, and Otsuka has confirmed that it has no objection to this application. *See, e.g.*, *In re: Request for Int'l Jud. Assistance From the Turkish Ministry of Just.*, 2016 WL 2957032, at *1–2 (N.D. Cal. May 23, 2016) (finding that it "does not appear that the request is

unduly intrusive or burdensome, especially given that the request is currently limited" and because the applicant asserted that "counsel for Facebook has represented that Facebook does not oppose the instant request for a Section 1782 order").

### C. It Is Appropriate to Grant this Application on an Ex Parte Basis.

Section 1782 applications are generally considered on an ex parte basis because "parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it." *IPCom GMBH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal 2014) (quoting *In re Republic of Ecuador*, 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010)); *see also In re: Ex Parte Application Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *2 ("§ 1782 petitions are regularly reviewed on an ex parte basis."). "The usual concerns presented by ex parte requests are mitigated in this setting because even after a court authorizes a discovery request under Section 1782, the opposing party typically retains the right to 'raise objections and exercise its due process rights by challenging the discovery after it is issued via a motion to quash.'" *In re Request for Jud. Assistance From People's Ct. of Da Nang City in Viet. in Matter of Dinh v. Nguyen*, 2022 WL 3327923, at *1 (quoting *Varian Med. Sys.*, 2016 WL 1161568 at *2).

## VII. CONCLUSION

For the reasons stated above, Novo respectfully requests that the Court expeditiously grant its application for discovery in aid of foreign proceedings under 28 U.S.C. § 1782 and issue an ex parte order authorizing it to serve a subpoena upon Otsuka in the form shown in Exhibit 2 to the Declaration of David Z. Pinsky.

Dated: March 13, 2025

By: /s/ Jeffrey M. Davidson
    Jeffrey M. Davidson

Jeffrey M. Davidson (Bar No. 248620)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: jdavidson@cov.com

Mark P. Gimbel *(pro hac vice application forthcoming)*
David Z. Pinsky *(pro hac vice application forthcoming)*
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: +1 (212) 841-1000
Facsimile: +1 (646) 441-9137
Email: mgimbel@cov.com
Email: dpinsky@cov.com

*Counsel for Applicant Novo Nordisk A/S*